IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAHIR SMITH, : | |
| on behalf of himself and all others : | |
| similarly situated, : | CIVIL ACTION |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| HIRERIGHT SOLUTIONS, INC. and : | NO. 09-6007 |
| USIS COMMERCIAL SERVICES, INC., : | |
| : | |
| Defendant. : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                                       June 7, 2010

Currently pending before the Court is the Motion of Defendant HireRight Solutions, Inc., formerly known as USIS Commercial Services, Inc.[1] to Transfer Venue to the Northern District of Oklahoma Pursuant to 28 U.S.C. § 1404. For the following reasons, the Motion is granted and the case is transferred to the United States District Court for the Northern District of Oklahoma.

**I.      FACTUAL AND PROCEDURAL HISTORY**

This litigation was initiated as a consumer class action based upon Defendant's willful violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). (Compl. ¶ 1.) The action is brought on behalf of the thousands of employment applicants throughout the country who have purportedly been the subject of prejudicial, misleading, and inaccurate

---

[1] Although the Complaint lists these two entities separately, Defendant HireRight Solutions, Inc. has indicated that they are a single entity that has simply changed its name. Accordingly, the Court will refer to both HireRight Solutions, Inc. and USIS Commercial Services, Inc. as one Defendant.

background reports performed by Defendant and sold to employers. (Id.)

According to the facts set forth in the Complaint, Defendant is a consumer reporting agency ("CRA"), which maintains consumer files containing public record information, including the criminal record history of individuals. (Id. ¶¶ 7, 9.) Defendant sells these consumer files to potential employers – consisting of a customer base of more than 28,000 businesses across the country – wishing to investigate the criminal history of various job applicants. (Id. ¶ 10.) The Complaint alleges that, as a matter of practice, Defendant, in violation of its obligations under the FCRA, neither notifies the consumer contemporaneously of its reporting of adverse public record information, nor maintains strict procedures designed to insure that such information is complete, up-to-date, and accurate. (Id. ¶ 14.) Moreover, according to the Complaint, Defendant regularly reports single incidents multiple times so that the consumer's criminal record history appears much more serious than it actually is. (Id.) By the time the consumer is made aware of the inaccurate and duplicative reporting, the report has already been sold to the requesting employer and become the basis of an employment decision. (Id.)

With respect to the named Plaintiff, the Complaint alleges that in February 2006, Plaintiff Bahir Smith had been arrested as a result of incident in Lancaster County, Pennsylvania. (Id. ¶ 18.) Plaintiff pled guilty to two summary offenses (defiant trespass and public drunkeness), while two misdemeanor charges (terroristic threats and simple assault) were nolle prossed, and a felony charge of burglary was dismissed by the court. (Id.) Aside from this one incident in February 2006, Plaintiff has never been arrested for any other offense. (Id. ¶ 21.)

Over the course of 2009, Plaintiff applied for truck driver positions with three different

companies. (Id. ¶¶ 22, 26, 30.) On each occasion, the prospective employer hired Defendant to perform a public record information search on Plaintiff. (Id. ¶¶ 23, 27, 31.) Defendant forwarded Plaintiff a copy of these reports with notations that they were also being provided to the prospective employers. (Id. ¶¶ 24, 28, 32.) In each report, Plaintiff's February 2006 criminal case was listed multiple times. (Id. ¶¶ 25, 29, 33.)

Plaintiff initiated the current federal action on December 17, 2009 alleging that Defendant willfully violated the Fair Credit Reporting Act by: (1) failing to notify consumers contemporaneously of the fact that criminal record information is being provided to prospective employers; (2) failing to maintain strict procedures to assure that the information is complete and up to date; and (3) failing to utilize procedures designed to assure maximum possible accuracy of the information it sells to prospective employers. (Id. ¶ 45(a-c).) In addition, the Complaint defined a prospective class of "[a]ll natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of the Complaint[,] who were the subjects of background reports in which criminal cases were duplicatively reported[,] and to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report." (Id. ¶ 36.) Defendant moved to dismiss the Complaint on March 24, 2010, which the Court declined to do on May 12, 2010. On April 30, 2010, Defendant filed the present Motion to Transfer Venue to the Northern District of Oklahoma Pursuant to 28 U.S.C. § 1404, Plaintiff responded on May 14, 2010, and Defendant submitted a Reply Brief on May 24, 2010. The Court now turns to a discussion of this Motion.

**II.     DISCUSSION**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); see also Connors v. UUU Prods., No. CIV.A.03-6420, 2004 WL 834726, at *6 (E.D. Pa. Mar. 5, 2004). The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877-878 (3d Cir. 1995) (federal law applies because questions of venue are procedural, rather than substantive).

Analysis of a request for a § 1404(a) transfer has two components. First, both the original venue and the requested venue must be proper. Jumara, 55 F.3d at 879. Venue, in a case based on federal question jurisdiction, is proper only in "(1) a jurisdiction where any of defendant resides if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or issues giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).

Second, because the purpose of allowing § 1404(a) transfers is "'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense,'" Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)), the Court is required to undertake a balancing test in deciding whether the "interests of justice [would] be better served by a transfer to a different forum." Jumara, 55 F.3d at 879. The Third Circuit has outlined a non-exhaustive list of pertinent public and private interest factors to be weighed in this

4

balancing test. The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80. The burden falls on the moving defendant to show the desirability of transferring venue and to present evidence upon which the court may rely in justifying transfer. Fellner ex rel. Estate of Fellner v. Philadelphia Toboggan Coasters, Inc., No. 05-CV-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).[2] Notably, analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case."[3] Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted).

In the case at bar, neither party disputes that the case "might have been brought" in Defendant's requested venue of the Northern District of Oklahoma. The Complaint at issue clearly alleges that Defendant is a Delaware corporation with its principal place of business of

---

[2] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." Fellner, 2005 WL 2660351, at *4.

[3] The Third Circuit has noted that its extensive enumeration of factors to be balanced makes "a written opinion setting forth the reasons for transfer . . . highly desirable." Jumara, 55 F.3d at 880 (internal quotations omitted).

business in Tulsa, Oklahoma, thereby satisfying the requirements for venue in the Northern District of Oklahoma. (Compl. ¶ 5.) Accordingly, the Court turns to the second part of the inquiry: whether the convenience of the parties and witnesses, as well as the interests of justice, would be served by transferring this case to the Northern District of Oklahoma. Considering the private and public interests enumerated by the Third Circuit, the Court finds that such a transfer is indeed proper.[4]

### A. Private Interests

#### 1. Plaintiffs' Choice of Venue

The analysis commences with an examination of Plaintiffs' choice of venue, as manifested by where the suit was originally brought. As a general rule, a plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly." In re Amkor Tech., Inc. v. Sec. Litig., No. CIV.A.06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)). "Moreover, where . . . the plaintiff files suit in its home forum, that choice is entitled to considerable deference." Am. Argo Corp. v. U.S. Fid. & Guar. Co., 590 F. Supp. 1002, 1004 (E.D. Pa. 1984).

Nonetheless, there are circumstances wherein a plaintiff's choice of forum is not entitled to significant deference. For example, "a plaintiff's choice [of forum] receives less weight where none of the operative facts occurred in the selected forum." Fid. Leasing, Inc. v. Metavec Corp., No. CIV.A.98-6035, 1999 WL 269933, at *2 (E.D. Pa. Apr. 29, 1999); see also Rowles v.

---

[4] Plaintiff asserts that defendant has been sued on multiple occasions and, oddly, has not moved to transfer venue until the present case. Aside from this argument being irrelevant to the § 1404 analysis, the Court notes that Plaintiff's citation of cases is incorrect and that Defendant has, on appropriate occasions in other cases, moved for § 1404 transfers.

6

Hammermill Paper Co., Inc., 689 F. Supp. 494, 496 (E.D. Pa. 1988) ("plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum.") (citations omitted). Moreover, as dictated by the United States Supreme Court, the choice of forum of a named plaintiff in a class action suit should be given less deference since any member of the putative class could potentially bring suit in his or her own forum. Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947). The Supreme Court explained that "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." Id. "Other courts within this district have applied the same reduced deference to a plaintiff's choice of forum when it involved a class action suit." Howell v. Shaw Indus., Nos. CIV.A.93-2068, 93-2638, 1993 WL 387901, at *3 (E.D. Pa. Oct. 1, 1993) (citing cases); see also Klingensmith v. Paradise Shops, Inc., No. CIV.A.07-322, 2007 WL 2071677, at *2 (E.D. Pa. Jul. 17, 2007) (declining to grant deference to forum choice of lead plaintiffs in a class action brought under the FCRA); Gen. Refractories Co. v. Washington Mills Electro Minerals Corp., No. CIV.A.94-6332, 1995 WL 361164, at *2-3 (E.D. Pa. Jun. 16, 1995) (noting that because a named plaintiff in a class action brings the case on behalf of "all others similarly situated" and because the testimony offered by the individual plaintiff in such a case is minimal, plaintiff's choice of forum should not be a controlling factor); In re All Terrain Vehicles Litig., Nos. CIV.A.88-237, 88-1914, 88-3031, 88-3178, 88-3910, 88-5509, 88-5510, 1989 WL 30948, at *3 (E.D. Pa. Feb. 23, 1989) (giving less deference to plaintiff's choice of forum and more weight to convenience of the parties/witnesses and the

location of documentary evidence in a nationwide class action suit); Donnelly v. Klosters Rederi A/S, 515 F. Supp. 5, 6 (E.D. Pa. 1981) (transfer warranted in class action despite plaintiff's choice of forum); Impervious Paint Indus., Ltd. v. Ashland Oil, Inc., 444 F. Supp. 465, 467-68 (E.D. Pa. 1978) (noting that plaintiff's choice of forum in class action deserves less weight, and transfer was necessary for the convenience of the parties and witnesses).

The named Plaintiff, in this case, is a resident of Pennsylvania and filed suit in his home forum of the Eastern District of Pennsylvania. As discussed in detail below, however, all of the operative facts common to the defined class occurred in Oklahoma. Pennsylvania maintains no substantive connection to the suit. Moreover, because this case was brought as a nationwide class action, an Oklahoma forum could conceivably be just as convenient to a large number of the putative members of the class. Given these circumstances, the named Plaintiff's choice of forum is not entitled to considerable deference.

### 2. **Defendants' Preference**

The second factor – defendant's forum choice – is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted). Nevertheless, Defendant's preference for an Oklahoma forum weighs in favor of transfer.

### 3. **Whether the Claim Arose Elsewhere**

"Typically the most appropriate venue is where a majority of events giving rise to the claim arose." In re Amkor Tech., 2006 WL 3857488, at *5. "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the

interests in efficiency and convenience, other private interests are afforded less weight." Cancer Genetics, Inc. v. Kreatech Biotech., No. CIV.A.07-273, 2007 WL 4365328, at *5 (E.D. Pa. Dec. 11, 2007).

Multiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business. See, e.g., Bogollagama v. Equifax Info. Servs., LLC, No. CIV.A.09-1201, 2009 WL 4257910, at *3 (E.D. Pa. Nov. 30, 2009) (finding that operative facts in FCRA case arose in forum where credit reports were compiled and issued); Klingensmith v. Paradise Shops, Inc., No. CIV.A.07-322, 2007 WL 2071677, at *2-3 (W.D. Pa. Jul. 17, 2007) (noting that an FCRA class action focuses of the conduct of defendant); Barela v. Experian Info. Solutions, Inc., No. CIV.A.04-5144, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005) (noting that an assessment of the relevant events and alleged harms in an FCRA case points to the defendant's place of business as the appropriate venue); see also Ayling v. Travelers Prop Cas. Corp., No. CIV.A.99-3243, 1999 WL 994403, at *5 (E.D. Pa. Oct. 28, 1999) ("Where plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.").

Plaintiff, in this case, alleges no facts that would place the situs of the material events within the Eastern District of Pennsylvania. Quite to the contrary, all of the challenged consumer reports that form the basis for this suit originated from a singular source – Defendant's place of business in Oklahoma. Indeed, as revealed by the Declarations attached to Defendant's Motion, customers submit requests for reports to Defendant in Tulsa, Oklahoma, the requests are fulfilled

in Tulsa through computer systems and personnel there, and notification letters such as those referenced in the Complaint are prepared in Tulsa. (Def.'s Mem. Supp. Mot. Transfer, Ex. A, Decl. of Danna Forman ("Forman Decl."), ¶¶ 6-8, Apr. 27, 2010.) In short, Defendant's alleged failures and wrongdoing occurred solely in Oklahoma.

In an effort to counter these facts, Plaintiff asserts that the faulty consumer reports on his criminal background were based on information from the Pennsylvania court system and that from "Plaintiff's experience and perspective, the substance of the events giving rise to his claims occurred in Philadelphia." (Pl.'s Resp. Mot. Transfer 5 n.4.) This argument, however, disregards the fact that Plaintiff brings the claims on behalf of all persons similarly situated throughout the country. To that end, the reports for the various class members could potentially be based on information from every single state. Moreover, although Plaintiff argues that the effects of Defendant's wrongdoing were felt, at least by him, in Pennsylvania, the Complaint does not set forth a claim for individual compensatory damages, meaning that the precise effects of Defendant's actions on the class members have no bearing on the case. Finally, the mere fact that Plaintiff Smith is, in his words, "simply [a] passive victim[] of Defendants' illegal practices," (id.), does not undermine the fact that the material and operative events all occurred in Oklahoma. Accordingly, this factor weighs in favor of transfer.

    **4.**   **<u>Convenience of the Parties and Party Witnesses</u>**

With respect to the convenience of the party and party witness factor, Defendant clearly has a stronger case. Defendant maintains its principal place of business in Tulsa, making Oklahoma a more convenient forum to Defendant and potentially some of the class members.

Defendant has no offices or employees in Pennsylvania.[5] (Forman Decl. ¶ 10.) Indeed, the sole connection to Pennsylvania is Defendant's use of a service in Western Pennsylvania to print and serve notification letters, such as those referenced in the Complaint, which have already been prepared in Tulsa. (Id. ¶ 7.) According to Defendant's evidence, this facility performs nothing more than a clerical function for Defendant (as well as other accounts) and is owned by a separate affiliate. (Def.'s Mem. Supp. Mot. Transfer 9; Forman Decl. ¶ 7.)

Moreover, Defendant has produced ample evidence to show that almost all relevant party witnesses would be located in Oklahoma. Specifically, Defendant provides the affidavit of Sarach LaChapell, the manager of Defendant's Customer Services Department, who avers that a consumer disputing the accuracy of a file needs to contact Defendant's call center in Tulsa. (Def.'s Mem. Supp. Mot. Transfer, Ex. C, Decl. Of Sarah LaChapell ("LaChapell Decl.") ¶ 5,

---

[5] Plaintiff attempts to rebut this assertion by referencing Defendant's website, wherein it states "USIS has two training processes and the volume of work in the local assigned area will determine which process will be used. All selected applicants will attend new Investigator classroom training at our Grove City Operations Center in Pennsylvania, in addition to on the job training in the local assigned area." (Pl.'s Resp. Mot Transfer 9 n.7 (citing http://tbe.taleo.net/NA5/atscareers/jobSearch.jsp?org=HIRERIGHT&cws=5).)

In response, Defendant offers the Declaration of William Mixon, president and CEO of USIS Investigations Services, LLC, who explains that USIS, LLC is the "grandparent corporation of HireRight Solutions, Inc." (Def.'s Reply Br., Ex. B, Decl. of William Mixon ("Mixon Decl.), ¶ 1, May 23, 2010.) USIS, LLC conducts classroom training for personnel it hires to perform investigations for the United States Office of Personnel Management ("OPM"). (Id. ¶ 2-3.) This training is held in Grove City, Pennsylvania, which is near OPM's own federal investigative services office. (Id. ¶ 3.) According to Mr. Mixon, such investigative personnel would not and did not play any role in the production of the background screening reports at issue in this case, or in the investigation and resolution of consumer disputes regarding these reports. (Id.) Moreover, based on his review of pertinent business records, Mixon avers that USIS, LLC has not issued any background reports concerning the named Plaintiff in this action. (Id. ¶ 4.)

As Plaintiff has not offered any contrary evidence to rebut this Declaration, the Court must find that Defendant has no office in Pennsylvania and that the activity of USIS Investigations Services, LLC cannot be imputed to Defendant.

11

Apr. 29, 2010.) All consumer requests for copies of their files are fulfilled by employees located in Tulsa and, aside from the occasional use of local researchers to pull court records, disputes regarding the accuracy of the information are coordinated by employees. (Id. ¶¶ 6-7.) Moreover, Defendant offers the affidavit of Danna Forman, Defendant's Manager of Public Relations, who explains that all customer requests for background screening are submitted to and processed by employees in Tulsa and notification letters are prepared in Tulsa. (Forman Decl. ¶¶ 6-7.) Finally, the Declaration of Steven Harpe, Defendant's Director of Information Technology Operations, states that although customers order reports for employment screening purposes through the internet, the information is processed and stored in the Tulsa Data Center.[6] (Def.'s Mem. Supp. Mot. Transfer, Ex. B, Decl. of Steven Harpe ("Harpe Decl.") ¶ 5, Apr. 28, 2010.) In short, all employees who could testify regarding Defendant's challenged practices work in Oklahoma.

In an effort to counter these facts, Plaintiff contends that his own role in the litigation "is expected to be active and he has a significant stake in the outcome of the litigation, not only for himself but also to achieve a benefit for thousands of other job applicants who have been victimized by Defendants' shoddy practices and inaccurate reporting." (Pl.'s Resp. Mot. Transfer 7.) He goes on to contend that Defendant should not be able to impact the lives of

---

[6] Plaintiff argues that "[t]o the extent it might be an overwhelming inconvenience to produce defense witnesses for depositions in Philadelphia, this could be ameliorated through the use of video/telephone depositions. Alternatively, Plaintiff's counsel could travel to the location of the witnesses to take the depositions." (Pl.'s Resp. Mot. Transfer 10.) While videotaped depositions are certainly an option, however, Plaintiff disregards the fact that many of these same witnesses might still be compelled to attend a trial in Philadelphia. Moreover, Plaintiff fails to explain how his own argument would not apply to the relatively few witnesses outside of Oklahoma he only speculatively and ambiguously identifies.

consumers with faulty reports and then insist that challenges to the reports be brought in a foreign forum.[7] (Id. at 8.)

Plaintiff's argument, however, is misplaced for several reasons. First, despite his expectation that he will "be active" in the litigation, he fails to explain how or for what purpose. The Complaint alleges a violation of two provisions of the FCRA: 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681k. To establish a case of willful noncompliance with § 1681e(b), a plaintiff must prove: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum accuracy; (3) injury to the consumer; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996). Further, the plaintiff must prove that the defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997) (quoting Philbin, 101 F.3d at 970). Under the § 1681k claim, Plaintiff must prove that Defendant, in furnishing a report containing adverse information of public record, failed to either notify the consumer contemporaneously with the transmission of the report or "maintain strict procedures" designed to ensure that the report is complete and up to date. 15 U.S.C. § 1681k(a). Notably, none of the elements of either

---

[7] Plaintiff relies on the case of Patterson v. ITT Consumer Fin. Corp., 18 Cal. Rptr. 2d 563 (Cal. Ct. App. 1993), for the proposition that it is "patently unconscionable" to make plaintiffs of limited means arbitrate in a foreign forum where the services contemplated in the contract were to be performed in their home state. (Pl.'s Resp. Mot. Transfer 3.) Patterson is inapposite for two reasons. First, this case hailed from California's intermediate court and thus has no precedential value and little persuasive authority. Jumara, 55 F.3d at 877. Second, and more importantly, the case did not deal with a § 1404 motion to transfer venue, but rather considered, under state law, whether an arbitration provision in a contract was unconscionable. As such, the Court does not give any weight to this decision.

of these claims requires Plaintiff's active participation or testimony.[8]  In fact, as Defendant points out, Plaintiff seeks only statutory damages and not individual damages about which he need testify.  (Compl. ¶ 43.); see Klingensmith, 2007 WL 2071677, at *2 (noting that although the named plaintiffs in a class action under the FCRA expressed a preference for litigating in Pennsylvania, there was "no indication that their role [would] be anything more than nominal in nature. . . . The focus of the litigation will be on [the defendant's] actions, not on any class members' actions.").

Moreover, Plaintiff again disregards the nature of his own case.  While the Eastern District of Pennsylvania is convenient to Plaintiff Smith, who resides in Philadelphia, it is not necessarily convenient to any of the other class members, who could reside anywhere in the United States.  Plaintiff does not, in any way, suggest that his participation would be more valuable than that of any other class member.

In short, the convenience of parties and party-witnesses militates in favor of an Oklahoma forum.  As such, the Court weighs this factor in support of Defendant's Motion.

### 5.    Convenience of Non-Party Witnesses

The next private factor – the convenience of non-party material witnesses – "is a

---

[8] Plaintiff argues, based on the case of Ayling v. Travelers Prop. Cas. Corp., 1999 WL 994403, at *4 (E.D. Pa. Oct. 28, 1999) that a plaintiff in a class action may play an active role, making his or participation crucial to a venue transfer analysis.  Ayling does little to help Plaintiff's case. Unlike here, the named plaintiff in Ayling (which was not an FCRA case) demonstrated that, despite the fact that her case was a class action, she could have an active an extensive role in the matter and that she maintained a significant financial stake in the litigation.  Id. at *3.  In addition, the court noted that she was a paraplegic with little financial resources making travel substantially more difficult.  Id.  Notwithstanding these unusual circumstances, the court found that other factors outweighed plaintiff's convenience and required transfer to the District of Connecticut.  Id. at *4-6.

particularly significant factor in a court's decision whether to transfer." Idasetima v. Wabash Metal Prods., Inc., No. CIV.A.01-97, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001) (citing Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000)); see also Howell, 1993 WL 387901, at *5 ("The convenience to witnesses weighs heavily in making a determination on whether to grant a motion to transfer venue.") There are many different types of witnesses, however, and each one carries a different weight. "[F]act witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily in the 'balance of convenience' analysis." Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 203 (D. Del. 1998).[9] Likewise, expert witnesses or witnesses who are retained by a party to testify carry little weight because they "are usually selected because of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." See Webster-Chicago Corp. v. Minneapolis-Honeywell Regulator Co., 99 F. Supp. 503, 505 (D. Del. 1951).

Defendant has not identified any non-party witnesses that it might call in its case. Plaintiff, for his part, has only speculated that "there may be local non-party witnesses in the case, such as personnel from the Philadelphia court system and the Administrative Office of Pennsylvania Courts, which maintains the database that Defendants regularly use in connection with the background reports they produce and sell." (Pl.'s Resp. Mot. Transfer 10.) This argument, however, fails to explain why any such witnesses would be necessary to proving the case. According to the Complaint, the prospective class is defined as, "[a]ll natural persons

---

[9] Under this factor, party witnesses or witnesses who are employed by a party have little impact on the "balance of convenience" analysis since each party is obligated to procure the attendance of its own employees for trial. Id.

residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of the Complaint[,] who were the subjects of background reports in which criminal cases were duplicatively reported[,] and to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report." (Compl. ¶ 36.) Since the Complaint challenges only the duplicative reporting of otherwise accurate criminal records, and not the accuracy of the criminal records themselves, there would be no need to call the potential non-party witnesses suggested by Plaintiff.

Therefore, neither party identifies anything under this factor that would make it either favor or undermine transfer. Accordingly, the Court gives it no weight.

### 6. Location of Books and Records

The final private factor the Court considers is the location of books and records. As recognized in other cases, however, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting Am. High-Income Trust v. AlliedSignal, Inc., No. CIV.A.00-690, 2002 WL 373473, at *5 (D. Del. March 7, 2002) (citations omitted)); see also 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3853 (3d ed. 2010) ("[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form, especially, for example, the ubiquitous e-mail, their location is entitled to little weight. This is particularly true with the development of photoduplication, facsimile transmission, the Internet, and the easy availability, excellent reproducibility, and relatively low cost of hard and electronic copies.").

This factor should thus be limited to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879.

Defendant produces ample evidence that multiple key documents are maintained in Tulsa, Oklahoma, including information exchanged between Defendant HireRight Solutions and its customers (Harpe Decl. ¶ 5), the information in the reports that HireRight Solutions sends to its customers (id. ¶ 6), the consumer notices referenced in the Complaint (id. ¶ 7), records of communications between HireRight Solutions and consumers (id. ¶ 8), electronic mail of HireRight Solutions' employees (id. ¶ 9), certain of HireRight Solutions' electronic data (id. ¶ 10), and hardcopy files of documents pertaining to certain consumer file requests and disputes. (LaChapell Decl. ¶ 9.) As Plaintiff notes, however, Defendant does not allege that any of the information could not be transmitted electronically to class counsel, or that production of the evidence would cause any undue hardship. Thus, while this factor may weigh slightly in favor of transfer, it has no significant impact on the Court's decision.

### B.  Public Interests

As noted above, the public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara, 55 F.3d at 879-80. The parties seem to agree that factors 1, 4, 5, and 6 are irrelevant since the case arises under a federal statute and involves a nationwide class. Accordingly, the Court focuses solely on factors 2 and 3.

17

### 1. **Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive**

With respect to the "practical considerations" factor, Defendant argues that trial would be "easier and less expensive in the Northern District of Oklahoma because that venue is the most convenient venue for many of HireRight's witnesses. Oklahoma is also where the bulk of the relevant documents are located." (Def.'s Mem. Supp. Mot. Transfer 11.) Plaintiff offers no countervailing practical considerations.

Although the Court has already considered Defendant's arguments with respect to witnesses and documents, we note that other practical considerations exist that would make a trial in the Northern District of Oklahoma easier. The two venues – the Eastern District of Pennsylvania and the Northern District of Oklahoma – sit at a substantial distance from one another and all HireRight employees would be required to travel such distances should the case remain here.[10] Moreover, should the parties require any hard copies of documents, it would certainly be more convenient for them to be transported to the nearby courthouse in Oklahoma. Finally, this action has been before the Court for a relatively short period of time and, thus, "a transfer will not significantly disrupt the litigation or result in a waste of judicial resources." Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006).

### 2. **The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion**

The final factor at issue – the relative backlog and caseloads of the two districts – also

---

[10] Plaintiff reiterates that it "*may have* Philadelphia area, non-party fact witnesses, whose convenience is more paramount." (Pl's Resp. Mot. Transfer 11 (emphasis added).) As noted above, however, such unsupported and unexplained speculation is insufficient to overcome Defendant's evidentiary showing of precise witnesses related to the case.

supports a transfer of venue. According to the March 31, 2009 statistics compiled and provided by Defendant, the Northern District of Oklahoma had 807 civil cases pending, while the Eastern District of Pennsylvania had 58,737. (Def.'s Mem. Supp. Mot. Transfer, Ex. E.) The statistics also show that, as of September 30, 2009, the Northern District of Oklahoma had 312 actions per judgeship, while the Eastern District of Pennsylvania had 2,213 cases per judgeship. (Id.) We note that, for all practical purposes, the calendar of this Court is not so full as to deny the parties prompt and thorough consideration of their case. Nonetheless, the seemingly lighter congestion in the the Northern District of Oklahoma weighs slightly in favor of transfer. See Hardaway Constructors, Inc. v. Conesco, 583 F. Supp. 617, 621 (D.N.J. 1983) (transferring venue from New Jersey to Maryland because, in part, Maryland's docket was "lighter" than New Jersey's); Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973) (fact that District of New Jersey had 353 cases per judge and Middle District of North Carolina had 177 cases per judge weighed in favor of transfer).

      To undercut Defendant's contention, Plaintiff argues that this Court has handled at least one other FCRA case and thus is familiar with the underlying issues. He goes on to note that "[i]n multi-district litigation . . . a judge's familiarity with the subject matter of a case is a factor in choosing where to transfer litigation." (Pl.'s Resp. Mot. Transfer 12 (citing In re Train Derailment Near Tyrone, Okl. on April 21, 2005, 545 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008).) Plaintiff, however, offers no evidence to substantiate its implied argument that this Court is more familiar with this type of case than the Northern District of Oklahoma. Given that the issues at stake in this litigation are strictly matters of federal law, the Court declines to make any such presumption.

### C. Conclusion

For all of the foregoing reasons, the Northern District of Oklahoma is the most appropriate venue for this case.  The matter is a nationwide class action focusing almost entirely on the actions of the Defendant corporation in Tulsa, Oklahoma.  All witnesses crucial to the elements of the class claims and all sources of documentary proof can be found in Oklahoma.  Finally, travel considerations and issues of court congestion all point to Oklahoma as the most convenient situs for further litigation of this matter.  Accordingly, the Court will grant Defendant's Motion and transfer this case as requested.

An appropriate order follows.